IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PENN-AMERICA INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> VE SHADOWOOD GP, LLC, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 5:22-cv-154 (MTT) <br> ) <br> ) <br> ) <br> ) |

## __ORDER__

Plaintiff Penn-America Insurance Company filed this action seeking a declaration that, under its Commercial General Liability ("CGL") Policy ("the Policy"), it does not owe a duty to defend or indemnify its insured, defendant VE Shadowood, LP, or defendant VE Shadowood, GP, LLC for claims asserted by defendant Latisha Baker in an underlying action. Doc. 1. Upon Penn's motion, the Court added Gateway Management Company, LLC as a defendant after Baker named Gateway in the underlying action. Docs. 36; 38. Both Penn and Gateway now move for summary judgment. Docs. 89; 90. Penn argues it has no duty to defend or indemnify Gateway because Gateway is not an "insured" and is not otherwise entitled to a defense as an "indemnitee" under the Policy. Doc. 89. Gateway argues Penn owes it a duty to indemnify based on its "insured contract" with VE Shadowood, LP. Doc. 90. For the following reasons, Penn's motion (Doc. 89) is **GRANTED in part** and **DENIED in part** and Gateway's motion (Doc. 90) is **DENIED**.

# I. BACKGROUND[1]

## A. The Underlying Action

On March 11, 2022, Baker sued the Shadowood defendants in Bibb County State Court "for the wrongful death of Cyrus Norwood, who 'was shot and killed'" at the Shadowood West Apartments in Macon, a property owned and operated by the Shadowood defendants.  Docs. 1-1; 89-5 ¶¶ 1, 4; 101-3 ¶¶ 1, 4.  Baker alleges the Shadowood defendants "maintain[ed] a nuisance," breached their "non-delegable duty to keep its premises and approaches safe," and "had knowledge of on-going criminal activity on the premises of Shadowood West Apartments."  Docs. 89-5 ¶¶ 2-3; 101-3 ¶¶ 2-3.

On August 12, 2022, Baker amended her complaint to add Gateway as a defendant after learning that Gateway managed the apartment complex.  Docs. 36-1; 89-5 ¶¶ 4-5; 90-2 ¶ 3; 101-3 ¶¶ 4-5; 102-2 ¶ 3.  She alleges the same claims against Gateway: that it is liable for the wrongful death of Norwood because it breached its "non-delegable duty to keep its premises and approaches safe" from "reasonably foreseeable criminal acts," it created and/or maintained a nuisance, and it "had knowledge of on-going criminal activity on the premises of Shadowood West Apartments."  Docs. 36-1 ¶¶ 39, 45; 89-5 ¶ 6; 101-3 ¶ 6.  Gateway answered in the underlying action and asserted a crossclaim against VE Shadowood, LP "based on a Management Agreement that contained a contractual indemnity provision as well as an agreement to procure insurance coverage for Gateway."  Docs. 89-5 ¶¶ 7-8; 101-3 ¶¶ 7-8.  The management agreement under which Gateway managed the Shadowood West

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Apartments provides: "Owner [VE Shadowood, LP] shall indemnify, protect, defend and hold harmless Manager [Gateway] from and against any and all Claims incurred by Manager resulting from performances of Manager's obligations under this Agreement, except that this indemnification shall not apply with respect to" various types of claims. Docs. 90-2 ¶ 4; 102-2 ¶ 4 (alterations in original).  In its crossclaim, Gateway claims VE Shadowood, LP (1) "is liable to Gateway for the amount of the insurance coverage it was bound to procure … including the cost of defense," and (2) owes Gateway a duty to indemnify.  Docs. 89-2 ¶¶ 8-9; 89-5 ¶ 9; 101-3 ¶ 9.

During discovery in the underlying action, Baker learned "that Gateway had discarded a binder … contain[ing] 'weekly reports' submitted by the complex's courtesy officer 'concerning any incidents, including criminal, that occurred on the property, as well as resident concerns that were reported to him.'"  Docs. 89-5 ¶ 12; 101-3 ¶ 12.  Because this evidence is allegedly "necessary" to prove her claims, Baker moved for sanctions against Gateway.  Docs. 89-5 ¶¶ 16-19; 101-3 ¶¶ 16-19.  The state court granted that motion and, "[a]s a sanction, the court decided that it will instruct the jury that Gateway was presumed to have knowledge of all the incidents at the property during the 5-year period, which 'may be rebutted by other evidence.'"  Docs. 89-5 ¶ 22; 101-3 ¶ 22.

**B. The Policy**

Penn issued the Policy to VE Shadowood, LP "as the named insured for the policy period of February 26, 2021 to February 26, 2022."  Docs. 89-5 ¶ 23; 101-3 ¶ 23.  The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which

[the] insurance applies." Docs. 1-2 at 17; 89-5 ¶ 24; 101-3 ¶ 24.  The Policy contains an "LLC limitation"—LLCs "not shown as a Named Insured in the Declarations" are not insureds.  Docs. 89-5 ¶ 27; 101-3 ¶ 27.  Paragraph two of the "Supplementary Payments – Coverages A and B" section of the Policy provides:

> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
>
>> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
>>
>> b. This insurance applies to such liability assumed by the insured;
>>
>> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
>>
>> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
>>
>> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
>>
>> f. The indemnitee:
>>
>>> (1) Agrees in writing to:
>>>
>>>> (a) Cooperate with us in the investigation, settlement or defense of the "suit";
>>>> (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
>>>> (c) Notify any other insurer whose coverage is available to the indemnitee; and
>>>> (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

        (a) Obtain records and other information related to the "suit"; and
        (b) Conduct and control the defense of the indemnitee in such "suit".

Docs. 89-5 ¶ 30; 101-3 ¶ 30.  The Policy excludes coverage for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  Doc. 1-2 at 18.  However, "[t]his exclusion does not apply to liability for damages …. [a]ssumed in a contract or agreement that is an 'insured contract.'"  *Id*.

   The Policy's per-occurrence limit of liability is $1,000,000.  *Id*. at 15.  However, a policy endorsement excludes coverage for "'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the use, sale, or demonstration of firearms or other weapons by any person[.]"  Docs. 89-5 ¶ 33; 101-3 ¶ 33.  But a separate endorsement provides "assault or battery" coverage in the amount of $50,000 for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' arising out of an 'event', of 'assault' or 'battery' that occurs in, on, near or away from the premises."  Doc. 1-2 at 41.

**C. Procedural History**

   On April 20, 2022, Penn filed this action against the Shadowood defendants and Baker, seeking a declaration that it does not owe a duty to defend or indemnify the Shadowood defendants for the claims asserted by Baker in the underlying action.  Doc. 1.  After discovery began, (1) Penn moved for judgment on the pleadings, arguing it owed no duty to defend or indemnify based on the Policy's firearms exclusion and that VE Shadowood GP, LLC was not an insured pursuant to the LLC Limitation, and (2) VE

Shadowood GP, LLC moved for partial judgment on the pleadings, arguing it was an additional insured.  Docs. 27; 28.  The Court held that it could not find as a matter of law that Penn did not owe a duty to defend or indemnify but held that as a matter of law VE Shadowood GP, LLC is not an additional insured.  Doc. 37 at 6-10.

Following Baker's addition of Gateway in the underlying action, Penn moved to add Gateway in this action.  Doc. 36.  The Court granted that motion, and Penn filed its amended complaint with Gateway as a defendant on October 14, 2022.  Docs. 38; 39.  Gateway failed to appear in the case and the Clerk of Court entered default against Gateway on November 30, 2022.  *See* Doc. 47.  Penn moved for default judgment on December 13, 2022.  Doc. 48.  That same day, Gateway moved to open default.  Doc. 50.  Upon further briefing, the Court set aside Gateway's default.  Doc. 62.  Penn then moved for judgment on the pleadings against Gateway, which the Court denied on July 6, 2023 because Penn failed to address Gateway's argument that it is entitled to a defense pursuant to the "insured contract" provision of the Policy.  Docs. 67; 74.

Both Penn and Gateway now move for summary judgment.[2]  Docs. 89; 90.  The Court held a hearing on these cross motions on April 24, 2024.  Doc. 111.  For the following reasons, Penn's motion is **GRANTED in part** and **DENIED in part** and Gateway's motion is **DENIED**.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[2] Because Penn and VE Shadowood, LP did not file motions for summary judgment against one another, the Court ordered those parties to file pretrial submissions.  Doc. 80.  However, after conferring with the parties, it was determined a trial on the issues between those parties was premature.  Docs. 96; 97.

matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id*.

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Thus, the Court "can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Cartrett.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts

that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, and will view the facts "in the light most favorable to the non-moving party on each motion." *Am. Bankers Ins. Grp.*, 408 F.3d at 1331; *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

### III. DISCUSSION

Gateway argues it is entitled to summary judgment because the management agreement between it and VE Shadowood, LP is an "insured contract" under the Policy and, thus, Penn has a duty to indemnify Gateway.  Doc. 90-1 at 3-7.  Penn disagrees, arguing that even if the management agreement qualifies as an "insured contract," that provision of the Policy applies to VE Shadowood, LP as the insured—not Gateway.  Doc. 102 at 6-8.

Penn argues it is entitled to summary judgment because Gateway is not an insured and Gateway is not entitled to a defense as an "indemnitee" due to Gateway's failure to meet the required conditions under that provision, citing a conflict between Gateway and Penn's insured, VE Shadowood, LP.[3]  Doc. 89 at 13-19.

"Insurance is a matter of contract and the parties are bound by the terms of the policy."  *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231 S.E.2d 245, 249 (1976).  Pursuant to Georgia law, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of

---

[3] Gateway does not respond to Penn's argument that Gateway is not an "insured" under the Policy pursuant to the "LLC Limitation."  Doc. 101 at 2.  Indeed, Gateway previously stated "it is not seeking status as an insured under the policy."  Doc. 59 at 2.  Its summary judgment briefs, which are limited to an "insured contract" and Gateway's status as an "indemnitee," confirm this position.  Docs. 90-1; 101; 107.  For these reasons and for the reasons previously stated by the Court in its Order addressing the Policy's "LLC Limitation" (Doc. 37 at 7-9), Gateway is not an "insured" and Penn's motion as to this issue (Doc. 89 at 13) is **GRANTED**.

contract construction." O.C.G.A. § 13-2-1; *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). "[U]nder the rules of contract construction, the policy is construed against [the insurer] as the drafter of the policy and any exclusions from coverage are strictly construed." *Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 250 Ga. App. 673, 677, 551 S.E.2d 388, 392 (2001). "When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the court must expound the contract as made by the parties." *Burnette v. Ga. Life & Health Ins. Co.*, 190 Ga. App. 485, 485, 379 S.E.2d 188, 189 (1989). "Where a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured." *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324, 548 S.E.2d 67, 69 (2001); *see* O.C.G.A. § 13-2-2(5).

**A. Gateway's Motion for Summary Judgment**

Gateway contends Penn owes it a duty to indemnify "under the plain terms of the Policy because [VE Shadowood, LP] assumed Gateway's tort liability in the Management Agreement, an insured contract as defined by" the Policy. Doc. 90-1 at 3.

The Policy provides that Penn will cover damages the *insured* has "[a]ssumed in a contract or agreement that is an 'insured contract.'" Doc. 1-2 at 18. First, as Penn points out, "[b]ecause Gateway is not an insured—as it readily admits—it is not entitled to coverage." Doc. 102 at 6-7. This provision allows for the insured, VE Shadowood, LP, to seek indemnification for damages it incurred pursuant to an insured contract—*not* Gateway. Gateway failed to respond to this argument. *See* Doc. 107.

Second, even if the management agreement constituted an "insured contract" and Gateway is entitled to seek relief under this provision, it is only entitled to indemnification and the issue of indemnification is not ripe for the Court's review. *See Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2 1367, 1372-73 (N.D. Ga. 2009) ("[T]he court will follow the 'wealth of authority' counseling against exercising jurisdiction over the premature issue of the duty to indemnify."); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) ("[The insurer]'s duty to indemnify [the insured] is not ripe for adjudication until the underlying lawsuit is resolved."). At the summary judgment hearing, Gateway did not disagree with Penn's ripeness argument. *See* Doc. 112 at 17:6-11, 26:4-17. Related to that, if Gateway has rights under this provision of the Policy, it would have to first obtain relief from VE Shadowood, LP, not Penn. Because Gateway is not insured under the Policy, it cannot "bring a direct action against a defendant's insurance company unless the plaintiff has obtained a judgment against the defendant that remains unsatisfied." *Atl. Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 841, 802 S.E.2d 844, 848 (2017). Of course, Gateway's crossclaim against VE Shadowood, LP seeks exactly that.

Accordingly, Gateway is not entitled to "coverage" under the "insured contract" provision of the Policy. The question of whether it is entitled to indemnification for liabilities incurred pursuant to an "insured contract" is not ripe for review. Therefore, Gateway's motion for summary judgment (Doc. 90) is **DENIED** without prejudice.

**B. Penn's Motion for Summary Judgment**

Paragraph two of the "Supplementary Payments – Coverages A and B" section of the Policy provides that if Penn "defend[s] an insured against a 'suit' and an

-11-

indemnitee of the insured is also named as a party to the 'suit', [Penn] will defend that indemnitee if" six conditions are met, two of which are relevant here:

> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
>
> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee[.]

Doc. 1-2 at 25.  The Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."[4]  *Id*. at 32.

Penn contends it owes Gateway no duty to defend under this provision because condition (d) and the second part of condition (e) "cannot be met" due to a conflict between VE Shadowood, LP and Gateway created by "(1) Gateway's crossclaim against Shadowood; (2) the sanction order against Gateway; and (3) application of Georgia's apportionment rules."[5]  Doc. 89 at 14.  The Court agrees—there are clear conflicts between VE Shadowood, LP and Gateway in the underlying action, and Penn could not assign the same lawyer to represent both parties under Georgia law.

First, though, the Court addresses a threshold issue.  The parties do not address whether a non-insured can bring a direct action to compel an insurer to provide a defense.  As noted, a non-insured indemnitee claiming the benefit of an insured contract

---

[4] Whether the underlying lawsuit for wrongful death meets this definition is not at issue.  *See generally*, Docs. 89; 101.

[5] At the hearing, Penn clarified that it is not conceding that the other four conditions are met; rather, it is arguing that, even if those other conditions are met, condition (d) and the second part of condition (e) are not met.  Doc. 112 at 10:15-24.  The Court notes that it asked the parties whether VE Shadowood, LP "ask[ed] [Penn] to conduct and control" Gateway's defense, pursuant to condition (e).  Docs. 1-2 at 25; 112 at 31:4-6.  Neither party had an answer, and the record does not establish whether this part of the condition is met.  Doc. 112 at 9:14-18, 31:7-8

-12-

has no rights under a policy until the indemnitee obtains a judgment against the insured. The indemnification of insured contracts, like indemnification for liability claims, is a benefit for the insured. Logically, Penn's *option* to provide a defense to an indemnitee is also a benefit for the insured. By providing a defense to the indemnitee, the insurer is reducing the insured's exposure, and the insurer's ultimate liability, under the insured contract to the indemnitee. But that agreement with the insured confers no rights on the non-insured indemnitee. Rather, as discussed, the indemnitee must first get a judgment against the insured for its damages, including its cost of defense.

Even if Gateway somehow had the right to call upon Penn to provide a defense, Georgia's apportionment statute necessarily puts VE Shadowood, LP and Gateway at odds and, thus, there (1) "appears" to be a conflict "between the interests of the insured and the interests of the indemnitee," and (2) the same counsel cannot represent both VE Shadowood, LP and Gateway. Doc. 1-2 at 25. The apportionment statute provides:

> Where an action is brought against one or more persons for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall … apportion its award of damages among the person or persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

O.C.G.A. 51-12-33(b). VE Shadowood, LP and Gateway will necessarily argue to the jury in the underlying action that the other is responsible, or more responsible, for Baker's damages—i.e., that Norwood's death resulted from the other's failure to keep Shadowood West Apartments safe from dangerous criminal activity. *See* Doc. 36-1 ¶ 18. Because Gateway was the onsite manager, VE Shadowood, LP, Penn's insured, is

in a particularly strong position to fault Gateway.  As explained by the Eleventh Circuit, this is a classic "pointing fingers" scenario:

> If apportionment did in fact apply, it would be in each [defendant]'s best interest to point his finger at the other [defendants] and to downplay his own fault.  To basically say, "It was them, not me!"  This conflict would be most obvious during closing argument, when the group's lawyer would have to pick and choose among the individual [defendants] in crafting his apportionment argument.  No doubt, the lawyer would make [defendant]-specific arguments in telling the jury what percentage of fault it should assign to each liable [defendant].  This would necessarily pit each [defendant] against the others … If we gave the [defendants] what they ask for—a new trial—each [defendant] would have to hire his own lawyer for the reasons we've just explained.

*Fed. Deposit Ins. Corp. v. Loudermilk*, 930 F.3d 1280, 1284, 1292 (11th Cir. 2019).  Clearly, there "appears" to be a conflict between the interests of VE Shadowood, LP and the interests of Gateway.  Just as clearly, the same lawyer cannot represent both VE Shadowood, LP and Gateway.  Rule 1.7(a) of the Georgia Rules of Professional Conduct[6] provides:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

Rule 1.7 allows for representation in the existence of a conflict if the client's consent is obtained, but "consent is not permissible" where "the representation … involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients."  Ga. R. Prof. Cond. 1.7(c)(3).  Applying this rule, it is clear that the same lawyer could not represent both

---

[6] The Georgia Rules of Professional Conduct govern the representation of VE Shadowood, LP and Gateway in the underlying action.  Ga. R. Prof. Cond. 4-101 (The "Georgia Rules of Professional Conduct [are] to be observed by the members of the State Bar of Georgia and those authorized to practice law in Georgia.").

parties.  A lawyer would not ethically be able to invoke the apportionment statute because it would result in an argument to the jury that their *other* client is responsible, thereby creating a "significant risk" that the lawyer's duties to one party would materially and adversely affect representation of the other.  *See Paul v. Smtih, Gambrell & Russell*, 267 Ga. App. 107, 110, 599 S.E.2d 206, 209 (2004) ("It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client—undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others.").

Gateway argues Georgia's apportionment statute does not create a conflict because (1) Penn "is obligated to pay any damages incurred by Gateway and VE Shadowood, LP," and (2) "damages cannot be apportioned in the underlying action."[7] Doc. 101 at 8-10.  The first argument fails for the reasons set forth above and for an additional reason.  The liability coverage likely available is limited to $50,000 pursuant to the Policy's firearms exclusion and the assault or battery endorsement.  Doc. 1-2 at 41, 62.  Thus, the lawyers representing the defendants in the underlying action will be obligated to shift blame to codefendants to protect their clients from judgments exceeding the available insurance coverage.  Regarding its second argument, Gateway contends apportionment is "not possible" because Baker alleges it and VE Shadowood, LP "acted 'as a joint venture.'"  Doc. 101 at 10.  But that is one of multiple alternative theories—Baker also alleges they are "joint tortfeasors," are "individually" liable, and

---

[7] Gateway also argues Penn waived this argument by failing to include it in its "reservation of rights" letter. Doc. 101 at 7-8.  This argument is meritless.  "A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its *insured* while still preserving the option of litigating and ultimately denying coverage."  *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 405, 730 S.E.2d 413, 416 (2012) (emphasis added).  Gateway is not Penn's insured.

separately alleges claims against each defendant. Doc. 36-1 ¶ 6. Gateway cites no authority suggesting that the apportionment statute does not apply, and the Court can find none.[8]

Even if in the early stages of the underlying action one lawyer could, perhaps by some agreement, represent both VE Shadowood, LP and Gateway, or even if a lawyer mistakenly represented both, Gateway's spoliation of evidence would make continued joint representation impossible. In December 2023, the Bibb County State Court found that Gateway—after receiving Baker's notice of intent to sue and direction to preserve evidence concerning criminal activity at the Shadowood West Apartments—failed to preserve a binder containing weekly incident reports. Docs. 89-4 at 2; 89-5 ¶¶ 12, 20; 101-3 ¶¶ 12, 20. The court further found that "[t]he content of the binder is relevant to showing prior criminal activities on the Property and to showing Gateway's knowledge of prior criminal activities on the Property," an element of both of Baker's claims against each defendant. Doc. 89-4 at 2-3. It therefore sanctioned Gateway: "the Court will give an instruction to the jury that Gateway is presumed to have knowledge of all incidents at the Property during the five (5) years preceding November 10, 2021, for which an incident report [was prepared] and that this presumption may be rebutted by other evidence." *Id*. at 3.

Just as Gateway's spoliation strengthens Baker's case, it strengthens VE Shadowood, LP's argument that Gateway is solely, or mostly, responsible for Baker's

---

[8] Gateway argued at the hearing that apportionment will not be an issue because "the best defense is to say neither one of us is liable." Doc. 112 at 19:10-11. The Court acknowledged that would be the parties' "first line of defense," but further noted that "[t]he second line of [VE Shadowood, LP's] defense is that if anybody's liable, Gateway is. And the third line of the defense is, if you think [VE Shadowood, LP] played some small part in this, then we're 1 percent and Gateway is 99 percent." *Id*. at 19:14-19.

-16-

injuries.  But no lawyer representing both VE Shadowood, LP and Gateway could make that argument.  In short, the spoliation sanction exacerbates the parties' conflict of interests and confirms that Penn could not ethically assign the same lawyer to represent both parties.

Finally, if there is any room for doubt (and there is not), Gateway's crossclaim against VE Shadowood, LP shatters that doubt.  Gateway alleges VE Shadowood, LP, pursuant to the parties' management agreement, "agreed to procure insurance coverage for Gateway as well as to indemnify Gateway," and, thus, "is liable to Gateway for the amount of the insurance coverage it was bound to procure," and also "owes indemnification to Gateway."  Doc. 89-2 ¶¶ 1, 8-9.  Under Rule 1.7, client consent is prohibited "if the representation … includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding."  Ga. R. Prof. Cond. 1.7(c)(2).  The comments to Rule 1.7 expand on this prohibition: "Paragraph (c) (2) prohibits representation of opposing parties in the same or a similar proceeding including simultaneous representation of parties whose interests may conflict, *such as* co-plaintiffs or *co-defendants*."  Ga. R. Prof. Cond. cmt. 7 (emphasis added).  Gateway's crossclaim against its co-defendant VE Shadowood, LP creates the exact type of incurable conflict contemplated by Rule 1.7(c).  Thus, the same lawyer could not represent both VE Shadowood, LP and Gateway in the underlying action because one of their clients has asserted a claim against their other client.  *See In re Cabe & Cato, Inc.*, 524 B.R. 870, 880 (Bankr. N.D. Ga. 2014) ("[I]f the interests of another client may impair the lawyer's independent professional judgment or in anyway foreclose alternatives that would otherwise be available to the client, the

lawyer is prohibited from undertaking simultaneous representation."); *Adkins v. Hosp. Auth. of Houston Cnty., Ga.*, 2009 WL 3428788, at *8 (M.D. Ga. Oct. 20, 2009) ("It is clearly improper, however, for an attorney to simultaneously represent two clients … when he is unable to maintain loyalty to both clients and may be required to breach client confidentiality.").[9]

At the hearing, Gateway primarily raised two arguments regarding the conflict. It argued that the parties, by their conduct, showed that there is no conflict, noting that the conflict was not "obvious" to Penn because it initially hired one lawyer to defend both VE Shadowood, LP and Gateway, although it subsequently assigned separate counsel after this action was filed. Doc. 112 at 16:14-25. It further argued that, because the management agreement provides that Gateway indemnifies VE Shadowood, LP and VE Shadowood, LP indemnifies Gateway, the parties' interests do not conflict. Docs. 89-2 at 12-13; 112 at 17:1-4, 19:5-7, 20:22-24. First, Gateway did not brief these arguments and cited nothing in the record or any authority to support them. *See* Docs. 101; 112 at 38:3-15. Second, these arguments are meritless. There is nothing in the record addressing the circumstances regarding assignment and reassignment of counsel. And the management agreement's indemnification provision is replete with exceptions not addressed by the parties. Doc. 89-2 at 12-13. Finally, Gateway also alleges in its crossclaim that VE Shadowood, LP failed to *procure* appropriate insurance coverage, a likely reference to the meager $50,000 coverage available for Baker's claims. Docs. 1-2

---

[9] Gateway argues its crossclaim does not create a conflict because the case law relied upon by Penn is distinguishable, it is only seeking "to preserve contractual rights that have been called into doubt," VE Shadowood, LP "has not denied the allegations in Gateway's crossclaim or alleged any claims against Gateway," and its "crossclaim was precipitated by [Penn]'s declaratory judgment action." Doc. 101 at 3-6. However, none of these arguments nullify the *existence* of the crossclaim.

at 41; 89-2 ¶ 8.  In any event, condition (d) of the indemnitee provision only requires a conflict to "appear to exist," and, on this record, there is an apparent conflict that the parties did not waive.  Doc. 1-2 at 25.

Accordingly, Penn's motion for summary judgment as to whether Gateway is entitled to a defense pursuant to paragraph two of the "Supplementary Payments – Coverages A and B" section of the Policy (Doc. 89) is **GRANTED**.[10]

## IV. CONCLUSION

The bottom line is that the only relief possibly available to Gateway is indemnification as an "indemnitee" pursuant to its alleged "insured contract" with VE Shadowood, LP.  That issue is not ripe.  And while Penn has no obligation to provide Gateway with a defense, the question of whether Gateway, as an "indemnitee," may seek recovery of its defense costs is also not ripe for review and, in any event, is not before the Court.  Thus, Penn's motion (Doc. 89) is **GRANTED** to this extent—for the reasons discussed, Gateway is not an insured and is not entitled to a defense pursuant to paragraph two of the "Supplementary Payments – Coverages A and B" section of the Policy; otherwise, both motions (Docs. 89; 90) are **DENIED** without prejudice.

**SO ORDERED**, this 9th day of July, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[10] Penn further argues Gateway is not entitled to coverage under the Policy pursuant to the firearms exclusion.  Doc. 89 at 19-20.  Because the Court holds that Gateway is not entitled to a defense under paragraph two of the "Supplementary Payments – Coverages A and B" section of the Policy and the issue of indemnification is not ripe, the Court does not address this issue.  In any event, in ruling on Penn's motion for judgment on the pleadings against the Shadowood defendants, the Court held that "[n]othing in the policy suggests the grant of coverage is taken away by the firearms endorsement."  Doc. 37 at 7.  The Court also denied Penn's motion for judgment on the pleadings against Gateway, which raised the same argument regarding the firearms exclusion.  Docs. 67 at 5; 74.  For Gateway, the impact of the firearms exclusion will be addressed if Gateway succeeds in its crossclaim and if it then seeks relief from Penn.